## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REINALDO FANTAUZZI** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 18-5166** |
| | : |
| **JOHN E. WETZEL, *et al.*** | : |
| | : |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                              **September 18, 2019**

An unknown fellow inmate assaulted inmate Reinaldo Fantauzzi as he played chess in a Pennsylvania prison while the correctional officer slept at his post. Mr. Fantauzzi suffered serious physical injury and alleged ongoing emotional distress. Mr. Fantauzzi grieved the correctional officer's failure to protect him but after investigation, the prison officials denied the grievance finding no evidence of the correctional officer sleeping. Mr. Fantauzzi now *pro se* seeks damages, injunctive and declaratory relief from Pennsylvania Department of Corrections employees Secretary John E. Wetzel, Superintendent Cynthia Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Donna Varner in their official and individual capacities. He claims these state actors violated his civil rights by failing to protect him from another inmate and for depriving him of due process through a faulty grievance procedure. We must dismiss his complaint for failing to plead a claim. We dismiss his claims with prejudice for official capacity liability, for equitable relief as he is no longer held at the same prison, and damages challenging the grievance procedures and rulings under the Due Process Clause. We dismiss his claims for cruel and unusual punishment arising from the assault and supplemental state law claims without prejudice to timely file an amended Complaint consistent with this Memorandum.

## I.    Alleged facts.

From at least October 2015 until September 2016, Pennsylvania's Department of Corrections held Reinaldo Fantauzzi in custody at State Correctional Institution-Graterford.

### *State actors place Mr. Fantauzzi in a high security block in October 2015.*

In October 2015, Captain Terra labelled Mr. Fantauzzi "gang and drug affiliated" and placed him on a high security block with other "known and proven" gang members.[1] Captain Terra labelled Mr. Fantauzzi after an investigation confirmed him innocent of wrongdoing related to selling or using illegal drugs in the prison.[2] He warned Captain Tice about the "gang or drug affiliated" label's seriousness and expressed his fear of potential harm stemming from the label, including life-threatening injuries.[3] Captain Tice ignored Mr. Fantauzzi's warnings and continued labeling Mr. Fantauzzi as "gang affiliated" while housing him in the high security block.[4]

### *Assault by another inmate almost a year later.*

Eleven months later, on September 24, 2016, while Mr. Fantauzzi played chess in the Upper I Block Dayroom, an unknown inmate approached him multiple times.[5] After approaching Mr. Fantauzzi several times, the unknown inmate assaulted him while in view of the Block Office area and the Correctional Officer's unmanned desk.[6]

Correctional Officer Ferraci failed to man his Upper I Block dayroom post during the assault.[7] Instead, he slept in his office.[8] Correctional Officer Ferraci did not, nor did another Correctional Officer, make required rounds, supervise inmates, or conduct block safety checks before or during Mr. Fantauzzi's assault.[9]

Mr. Fantauzzi suffered a slash wound across his face and cheek from the assault requiring almost forty stitches.[10] An outside hospital treated Mr. Fantauzzi's injury and stitched the facial wound.[11] The state actors placed Mr. Fantauzzi on "increased control" after returning from the

2

hospital until they conducted an incident investigation.[12] This assault led to Mr. Fantauzzi suffering from severe Post Traumatic Stress Disorder coupled with regular "flashback nightmares" of the attack, and he treats with a psychiatrist relating to this extreme trauma's aftermath.[13] On October 7, 2016, the prison acknowledged an inmate assaulted Mr. Fantauzzi "in Gen. Pop. and currently [Mr. Fantauzzi's] safety remains at risk if released."[14]

### *Mr. Fantauzzi grieves the assault.*

On October 3, 2016, Mr. Fantauzzi grieved his assault.[15] He argued Correctional Officer Ferraci failed to man his post, made no rounds on the Upper I Block as required, and remained in his office for at least ninety minutes.[16] On December 20, 2016, Captain Terra denied Mr. Fantauzzi's grievance because Correctional Officer Ferraci denied he slept during the assault and the camera angle could not reach the area to show Correctional Officer Ferraci sleeping.[17] Mr. Fantauzzi appealed the initial grievance's denial to Superintendent Link, claiming again Correctional Officer Ferraci's failure to man his post by remaining in his office for ninety minutes.[18] On February 10, 2017, Superintendent Link denied his appeal because she could not substantiate Mr. Fantauzzi's claim Correctional Officer Ferraci slept during his shift.[19]

Mr. Fantauzzi submitted a final appeal to Chief Grievance Officer Varner, using an extra (third) sheet of paper to fully state his grievance.[20] Chief Grievance Officer Varner denied his claims immediately for exceeding the two-page limit allowed for filing grievance appeals.[21] Chief Grievance Officer Varner did not allow Mr. Fantauzzi to re-submit his appeal conforming to the two-page requirement.[22] Captain Terra and Lieutenant Reber investigated the matter, but denied Mr. Fantauzzi's claims.

Mr. Fantauzzi sued state actors Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner in their

individual and official capacities under 42 U.S.C. § 1983. He alleges Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner denied him due process by denying his grievances and grievance appeals and violated his Eighth Amendment by causing severe and extreme emotional distress constituting cruel and unusual punishment. He alleges Correctional Officer Ferraci violated the Eighth Amendment by being deliberately indifferent to a serious and unreasonable risk of physical harm to Mr. Fantauzzi and failing to protect Mr. Fantauzzi from another inmate's assault when Correctional Officer Ferraci slept in his office rather than man his post. He alleges all state actors, including Correctional Officer Ferraci, violated Pennsylvania state law by being negligent and intentionally inflicting emotional distress from their actions/inactions contributing to Mr. Fantauzzi's assault.

## II.    Analysis.

Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner move to dismiss Mr. Fantauzzi's Amended Complaint arguing: (1) we lack subject matter jurisdiction over damages claims against the individual actors in their official capacities under Eleventh Amendment immunity; (2) Mr. Fantauzzi fails to plead denial of due process; (3) Mr. Fantauzzi fails to plead personal involvement of Secretary Wetzel; (4) Mr. Fantauzzi fails to plead Correctional Officer Ferraci's deliberate indifference to a serious risk of harm; and, (5) Mr. Fantauzzi has no right to injunctive or declaratory relief as his claims are moot. They also request we decline to exercise supplemental jurisdiction over Mr. Fantauzzi's remaining state law claims of negligence and intentional infliction of emotional distress.

4

### A. We lack subject matter jurisdiction over Mr. Fantauzzi's civil rights claims against state actors in their official capacities.[23]

Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner argue Mr. Fantauzzi's civil rights "official capacity" claims are barred under the Eleventh Amendment. We agree.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."[24] Though states may consent to being sued in federal court, the Commonwealth specifically withholds consent to lawsuits under section 1983.[25] "This bar remains in effect when [Commonwealth] officials are sued for damages in their official capacity."[26] Because the Department of Corrections "is quintessentially an arm of the state and is funded by, controlled by, and accountable to the state,"[27] the Eleventh Amendment bars suit against it and its employees in their official capacities in federal court.[28] No bases of jurisdiction, pendent or otherwise, override this Eleventh Amendment bar.[29]

The Department of Corrections employed Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner.[30] The Commonwealth's Department of Corrections is part of the Commonwealth's executive department.[31] The Department of Corrections is immune to claims for damages in federal court under the Eleventh Amendment, and its above-named officials "share[] in the Commonwealth's Eleventh Amendment Immunity."[32] Because there is no subject matter jurisdiction over these civil rights damages claims against the state actors in their official capacities,[33] all claims for damages based on their official capacity must be dismissed with prejudice unless there is an exception.

One exception to Eleventh Amendment immunity under 42 U.S.C. § 1983 exists in specific circumstances permitting injunctive or declaratory relief against Commonwealth officials in their

official capacities.[34] This narrow exception "applies only to *prospective relief*, [and] does not permit judgments against [Commonwealth] officers declaring [] they violated federal law in the past . . . ."[35] This exception stemming from *Ex parte Young* "ensures [Commonwealth] officials do not employ the Eleventh Amendment [to avoid] compliance with federal law . . . ," and allows federal courts to "enjoin [Commonwealth] officials to conform their future conduct to the requirements of federal law. . . ."[36] To determine whether this exception to Eleventh Amendment immunity applies, the court must "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[37]

In *McIlmail v. Pennsylvania*, Judge Joyner "focus[ed] on the substance of the relief sought in" the complaint to determine whether it is prospective and thus excepted from the Eleventh Amendment's bar.[38] Judge Joyner emphasized "the applicability of the Eleventh Amendment depends on the substance rather than form of the requested relief."[39] When a plaintiff solely seeks redress for past wrongs rather than relief to control or prohibit future violative conduct, such relief is not prospective in nature and "Pennsylvania, its agencies, and its officers enjoy sovereign immunity pursuant to the Eleventh Amendment."[40]

Mr. Fantauzzi seeks declaratory and injunctive relief and compensatory punitive damages.[41] He alleges the state actors failed to protect him at the time of the September 24, 2016 assault, failed to follow procedures preventing safety breaches, and wrongfully resolved or denied his grievances and appeals.[42] Mr. Fantauzzi's compensatory and punitive damages are neither prospective nor injunctive.[43] They relate to past conduct. His claims for injunctive relief are moot. Mr. Fantauzzi is no longer incarcerated at SCI-Graterford and does not allege having existing contact with the state actors. He alleges no ongoing federal law violation by the state actors

6

allowing prospective relief. Mr. Fantauzzi focuses on past wrongs committed by state actors not excepted from Eleventh Amendment immunity.[44] Because he did not, and could not, seek to clarify what type of relief would correct *future* instances of these state actors' violative practices against him, Mr. Fantauzzi fails to identify specific prospective relief not barred by the Eleventh Amendment and his claims against the state actors in their official capacity must be dismissed with prejudice.

**B.    We dismiss Mr. Fantauzzi claims Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner denied him due process in the prison's grievance procedure with prejudice.**

**1.    Mr. Fantauzzi has no procedural due process right to specific prison grievance procedures.**

Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner argue they did not infringe on Mr. Fantauzzi's procedural due process rights, as Mr. Fantauzzi does not have a constitutionally protected right to the Department of Corrections' grievance procedures. We agree.

The first step in analyzing a procedural due process claim "is [determining] whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."[45] To present a cognizable procedural due process claim under the Fourteenth Amendment, the claim must involve a protected interest.[46] For inmates, the Due Process Clause's safeguards are triggered only when circumstances "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[47] Where an inmate has no protected interest relating to his claim, there cannot be deprivation of due process requiring constitutional redress.[48]

"[A]lthough prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by [prison officials' failure] to address

7

these grievances."[49] "Access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [section] 1983."[50] In *Burnside v. Moser*, our Court of Appeals affirmed "[i]nmates do not have a constitutionally protected right to the prison grievance process."[51] Our Court of Appeals in *Burnside* did not commend failure to process grievances, but noted such behavior by prison officials "does not rise to the level of [violating] a constitutional right."[52] "[A prison official's failure] to provide a favorable response to an inmate grievance is not a federal constitutional violation."[53]

## 2. Mr. Fantauzzi fails to plead the state actors denied him procedural due process by adversely resolving his grievances.

Secretary Wetzel, Superintendent Link, Captain Terra, Lieutenant Reber and Chief Grievance Officer Varner argue they did not infringe on Mr. Fantauzzi's due process rights as Mr. Fantauzzi does not have a constitutionally protected right to the Department of Corrections' grievance procedures. As described above, we agree.

Mr. Fantauzzi fails to plead any conduct by Secretary Wetzel. Even if he could plead Secretary Wetzel had some role in the grievance process, we would dismiss this claim as described above.

### *No basis to plead Superintendent Link's liability for denying his grievance.*

Superintendent Link argues Mr. Fantauzzi cannot plead she violated his due process rights as Mr. Fantauzzi does not have a constitutionally protected right to the Department of Corrections' grievance procedures. We agree. Mr. Fantauzzi's allegations against Superintendent Link are grounded in her improper handling of Mr. Fantauzzi's grievances. Mr. Fantauzzi alleges Superintendent Link denied his first grievance's appeal, "again in the face of video showing [his] claims to be in fact-true."[54] Though Mr. Fantauzzi provides reasoning for why he believes

8

Superintendent Link's "actions/inactions . . . contributed to and proximately caused the violation and denial of [his] Due Process of Law in violation of the Fourteenth Amendment . . . ,"[55] such rationalizations are not relevant today as he has no constitutionally protected right to specific prison grievance procedures. Mr. Fantauzzi cannot succeed on his claims simply because Superintendent Link did not handle his grievance appeal the way Mr. Fantauzzi believed she should. Mr. Fantauzzi's claims against Superintendent Link allegedly denying his grievance appeal "because 'sleeping while on shift,' could not be su[b]stantiated"[56] do not trigger the Due Process Clause's safeguards as they relate to the prison's handling of grievance procedures—a non-constitutionally protected right. Because Mr. Fantauzzi's due process allegations against Superintendent Link are solely based on Superintendent Link denying Mr. Fantauzzi's grievance appeal, they must be denied with prejudice.

### *No basis to plead Captain Terra's liability for denying his grievance.*

Mr. Fantauzzi's allegations against Captain Terra are grounded in his improper handling of Mr. Fantauzzi's grievances. Mr. Fantauzzi alleges Captain Terra denied his first grievance.[57] Though Mr. Fantauzzi provides reasoning for why he believes Captain Terra's "actions/inactions . . . contributed to and proximately caused the violation and denial of [his] Due Process of Law in violation of the Fourteenth Amendment . . . ,"[58] such rationalizations are not relevant today as he has no constitutionally protected right to specific prison grievance procedures. Mr. Fantauzzi cannot succeed on his claims simply because Captain Terra did not handle his grievances the way Mr. Fantauzzi believed he should. Mr. Fantauzzi's claims against Captain Terra allegedly denying his grievances "because [Correctional Officer] Ferraci denied he was sleeping and [the] 'camera angle' could not show if [Correctional Officer] Ferraci was sleeping"[59] do not trigger the Due Process Clause's safeguards as they relate to the prison's handling of grievance procedures—a

9

non-constitutionally protected right. Because Mr. Fantauzzi's due process allegations against Captain Terra are solely based on Captain Terra denying Mr. Fantauzzi's grievances, they must be denied with prejudice.

### *No basis to plead Lieutenant Reber's liability for denying his grievance.*

Lieutenant Reber argues Mr. Fantauzzi cannot plead a due process claim against him as the allegations against Lieutenant Reber are grounded in his improper handling of Mr. Fantauzzi's grievances. We agree. Mr. Fantauzzi alleges Lieutenant Reber "deliberately failed to address [his claims Correctional Officer Ferraci failed to man his post, make required rounds on the block, and remained in his office before and during the assault] in the face of all the video [depicting his allegations]."[60] Though Mr. Fantauzzi provides reasoning for why he believes Lieutenant Reber's "actions/inactions . . . contributed to and proximately caused the violation and denial of [his] Due Process of Law in violation of the Fourteenth Amendment . . . ,"[61] such rationalizations are not relevant today as he has no constitutionally protected right to specific prison grievance procedures. Mr. Fantauzzi cannot succeed on his claims simply because Lieutenant Reber did not handle his grievances the way Mr. Fantauzzi believed he should. Mr. Fantauzzi's claims against Lieutenant Reber allegedly investigating and denying his grievances "in the face of the [video] evidence"[62] do not trigger the Due Process Clause's safeguards as they relate to the prison's handling of grievance procedures not protected by the Due Process Clause. Because Mr. Fantauzzi's due process allegations against Lieutenant Reber are based on denying Mr. Fantauzzi's grievances, they must be denied with prejudice.

### *No basis to plead Chief Grievance Officer Varner's liability for denying his grievance.*

Chief Grievance Officer Varner argues Mr. Fantauzzi did not plead she violated his due process rights as Mr. Fantauzzi does not have a constitutionally protected right to the Department

10

of Corrections' grievance procedures. We agree. Mr. Fantauzzi's allegations against Chief Grievance Officer Varner are grounded in her improper handling of Mr. Fantauzzi's grievances. Mr. Fantauzzi alleges Chief Grievance Officer Varner "denied [his final grievance appeal] without allowing [him] to resubmit his appeal [] because he exceeded the two page limit."[63] Though Mr. Fantauzzi pleads why he believes Chief Grievance Officer Varner's "actions/inactions . . . contributed to and proximately caused the violation and denial of [his] Due Process of Law in violation of the Fourteenth Amendment . . . ,"[64] such rationalizations are not relevant today as he has no constitutionally protected right to specific prison grievance procedures. Mr. Fantauzzi cannot succeed on his claims simply because Chief Grievance Officer Varner did not handle his final grievance appeal the way Mr. Fantauzzi believed she should. Mr. Fantauzzi's claims against Chief Grievance Officer Varner allegedly denying his final grievance appeal because she "chose in the face of the facts and a life threatening injury to dismiss [his] claims due to [him] using an extra sheet of paper [] to fully state his grievance"[65] do not trigger the Due Process Clause's safeguards as they relate to the prison's handling of grievance procedures—a non-constitutionally protected right. Because Mr. Fantauzzi's due process allegations against Chief Grievance Officer Varner are solely based on Chief Grievance Officer Varner denying Mr. Fantauzzi's final grievance appeal, they must be denied with prejudice.

**C.    We dismiss the civil rights claims relating to the September 24, 2016 assault with leave to amend.**

**1.    We review Mr. Fantauzzi's deliberate indifference claims relating to the September 24, 2016 assault under the Eighth Amendment's cruel and unusual punishment framework, not under the Fourteenth Amendment's substantive due process framework.**

Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner argue Mr. Fantauzzi cannot allege they violated his substantive due

process rights relating to the September 24, 2016 incident, as the "more-specific-provision" rule requires he bring these claims under the Eighth Amendment rather than the Fourteenth Amendment. They are correct.

Under the Supreme Court's "more-specific-provision" rule, "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to [the] specific provision, not under the rubric of substantive due process."[66] In *Betts v. New Castle Youth Development Center*, our Court of Appeals specified when an inmate plaintiff's "claims concern his conditions of confinement and an alleged failure by [d]efendants to ensure his safety," the "allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment" and "the more-specific-provision rule forecloses [the plaintiff's] substantive due process claims."[67] Because Mr. Fantauzzi offers no support for proposing his ability to bring both a substantive due process and Eighth Amendment claim challenging the same conduct by state actors on September 24, 2016, the more-specific-provision rule requires Mr. Fantauzzi bring his deliberate indifference claims against Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner under the Eighth Amendment, not under the Fourteenth Amendment's substantive due process framework.

## 2. Mr. Fantauzzi fails to plead Secretary Wetzel's personal involvement.[68]

Secretary Wetzel, the Secretary of Corrections, argues Mr. Fantauzzi fails to plead his personal involvement in failing to protect Mr. Fantauzzi from another inmate's assault as Mr. Fantauzzi pleads no facts linking Secretary Wetzel to the assault nor alleges causes of action against Secretary Wetzel. We agree.

12

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[69] "A civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."[70] Under 42 U.S.C. § 1983, individual liability is only warranted where an individual personally directed or knowingly acquiesced to the alleged misconduct.[71]

Mr. Fantauzzi makes no allegations against Secretary Wetzel. Secretary Wetzel's name appears only in the "Parties" section of the Amended Complaint.[72] Without specific allegations Secretary Wetzel personally contributed to Mr. Fantauzzi's alleged harm, there is no basis for Mr. Fantauzzi to proceed against him on any claim. Mr. Fantauzzi fails to plead Secretary Wetzel's personal involvement in his alleged harm. His claims against Secretary Wetzel must be dismissed without prejudice.

### 3. Mr. Fantauzzi fails to plead Correctional Officer Ferraci's deliberate indifference to a serious risk of harm relating to the assault.

Correctional Officer Ferraci argues Mr. Fantauzzi pleads no facts about his—or any other state actor's—personal knowledge of the particular risk to Mr. Fantauzzi on or before September 24, 2016. Correctional Officer Ferraci argues Mr. Fantauzzi fails to meet the "deliberate indifference" standard under the Eighth Amendment as he only pleads allegations amounting to mere negligence. We agree.

The Constitution neither "mandates comfortable prisons" nor "permit[s] inhumane ones."[73] The Eighth Amendment prohibits cruel and unusual punishment, imposing a duty on prison officials "to provide humane conditions of confinement."[74] This duty requires prison officials to "take reasonable measures to guarantee [inmate safety]" by protecting them from potential violence committed by other inmates.[75] Failure to protect claims involve an alleged deprivation of

13

an inmate's Eighth Amendment right focused on the particular basic necessity of personal safety.[76] "Still, not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'"[77]

"An Eighth Amendment claim against a prison official must meet two requirements: (1) 'the deprivation alleged must be, objectively, sufficiently serious;' and, (2) the 'prison official must have a sufficiently culpable state of mind.'"[78] Our Court of Appeals instructs:

> To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts [showing] (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to [the] substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.[79]

This "deliberate indifference" standard is a subjective one in the Eighth Amendment context, requiring "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[80] "It is well established [] merely negligent misconduct will not give rise to a claim under [section] 1983; the [Commonwealth] defendant must act with a higher degree of intent."[81] Judge Smith in *E.D. v. Sharkey* details the governing law in our Circuit confirming merely alleging "a defendant knew of a risk to the plaintiff is insufficient to support an inference of deliberate indifference absent any factual allegations supporting that conclusion, and thus cannot alone establish facial plausibility."[82] Judge Smith dismissed the inmate's "failure to protect" allegations against the prison guard as the inmate's "conclusory statements [the prison official] noticed the attention [another inmate] directed towards her and knew about their intimate relationship are not entitled to a presumption of truth."[83] A fair comparison is found in *Bistrian v. Levi* where our Court of Appeals concluded the inmate plead a plausible failure to protect claim by alleging he advised prison officials of a specific violent threat made by an identified inmate and

14

the officers still placed him "in the recreation yard with . . . [inmates] who knew of his prior complicity with prison authorities." [84]

Mr. Fantauzzi fails to allege Correctional Officer Ferraci personally knew of the particular risk for inmate assaults against him in the high security block. He alleges Officer Ferraci's negligence, including sleeping at his post at the time of the assault. But sleeping is not deliberate indifference absent a more specific connection to the harm. Unlike in *Sharkey* where the inmate at least made a conclusory statement about the prison official's knowledge, Mr. Fantauzzi fails to plead facts relating to Correctional Officer Ferraci's knowledge of his label or potential danger. Mr. Fantauzzi concludes Correctional Officer Ferraci's deliberate indifference to his safety without pleading he knew of a risk of assault harm—circumstantial or otherwise. [85] There is no specificity in Mr. Fantauzzi's allegations allowing an inference Correctional Officer Ferraci personally knew of any risk to Mr. Fantauzzi's safety and failed to protect him from the known risk. A correctional officer sleeping on the job may be negligence under Pennsylvania law but, absent pleading he knew of the risk from other inmates and ignored the risk by choosing to sleep rather than monitor his work station, Mr. Fantauzzi cannot convert Officer Ferraci's alleged sleeping on the job to a constitutional deprivation of civil rights.

Unlike in *Bistrian* where the inmate told many prison officials he feared for his safety and officials knew he received specific threats from identified inmates, [86] Mr. Fantauzzi alleges Captain Terra labeled him as "gang and drug affiliated" in October 2015, and Mr. Fantauzzi only warned Captain Tice about the label's dangerousness. [87] Mr. Fantauzzi does not allege he told anyone else about his concerns nor alleges anyone else—prison officials, inmates, or otherwise—knew about the label. He does not explain how Correctional Officer Ferraci would personally know of the label and/or any increased risk of potential violence to Mr. Fantauzzi by other inmates because of the

15

label. He does not plead threats of violence other inmates made against him putting Correctional Officer Ferraci on notice of an increased risk to Mr. Fantauzzi's safety.[88]

Mr. Fantauzzi's assault also occurred on September 24, 2016, eleven months following Mr. Fantauzzi's alleged conversations with Captain Terra and Captain Tice about his concerns regarding this label.[89] Mr. Fantauzzi alleges no threats to his safety or conversations with other prison officials about this label concern within the eleven-month time gap. Without alleging Correctional Officer Ferraci's personal knowledge of an objectively serious risk to Mr. Fantauzzi's safety, Mr. Fantauzzi pleads mere negligence.[90] Mr. Fantauzzi fails to plead Correctional Officer Ferraci's "deliberate indifference" to a serious risk of harm as the Eighth Amendment requires. His allegations against Correctional Officer Ferraci for his failure to protect Mr. Fantauzzi from another inmate's assault must be dismissed without prejudice.

### 4. Mr. Fantauzzi fails to plead an Eighth Amendment claim relating to the September 24, 2016 assault as to the remaining Defendants.

Mr. Fantauzzi makes no allegations supporting his contention Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner violated his Eighth Amendment rights. "An Eighth Amendment claim against a prison official must meet two requirements: (1) 'the deprivation alleged must be, objectively, sufficiently serious;' and, (2) the 'prison official must have a sufficiently culpable state of mind.'"[91] The Eighth Amendment's "deliberate indifference" standard is a subjective one, requiring "the prison official-defendant[s] must actually have known or been aware of the excessive risk to inmate safety."[92]

Mr. Fantauzzi pleads no facts linking Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner to his assault. Mr. Fantauzzi only alleges Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner's involvement in the grievance process and his dissatisfaction regarding their resolution of

16

his grievances. Because Mr. Fantauzzi does not allege Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner's involvement in his assault—never mind specifically alleging their deliberate indifference to a substantial risk to his safety relating to his assault—he cannot maintain an Eighth Amendment claim against them for causing him "severe and extreme emotional distress constituting cruel and unusual punishment."[93] Mr. Fantauzzi fails to plead Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner's "deliberate indifference" to a serious risk of harm as the Eighth Amendment requires.

His allegations against Secretary Wetzel, Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner for causing him severe and extreme emotional distress constituting cruel and unusual punishment must be dismissed without prejudice. He is granted leave to plead their personal involvement in the September 24, 2016 incident.

## D. We dismiss Mr. Fantauzzi's claims for injunctive and declaratory relief with prejudice as his claims are moot.

Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner argue Mr. Fantauzzi's claims for injunctive and declaratory relief are moot as he is no longer incarcerated at SCI-Graterford and does not allege on-going contact with them. We agree.

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"[94] "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."[95] "An inmate's transfer from the facility complained of generally moots [his] equitable and declaratory claims."[96] An exception to mootness exists where "a challenged action is [too short durationally] to be fully

litigated prior to its cessation or expiration," and "there [is] a reasonable expectation [] the same complaining party would be subjected to the same action again."[97]

In *Colón-Montañez v. Keller et al.*, our Court of Appeals affirmed an inmate's transfer from the complained-of facility "render moot his claims for injunctive relief against [the prior facility] personnel based on alleged conditions at that facility."[98] *Colón-Montañez* involved a Pennsylvania inmate at SCI-Dallas asserting multiple claims under 42 U.S.C. § 1983 against prison officials.[99] The state transferred the inmate to another prison facility before resolving his claims for injunctive relief against SCI-Dallas personnel.[100] Because the state transferred the inmate and he no longer endured the complained-of conditions and prison personnel at SCI-Dallas, his transfer mooted those claims for injunctive relief.[101]

In *Johnson v. Wenerowicz*, an inmate alleged several Department of Corrections employees at SCI-Graterford violated his due process and Eighth Amendment rights by housing him in the Special Management Unit.[102] The inmate sought injunctive, declaratory and compensatory relief, as well as punitive damages for the alleged violations.[103] But before resolving his claims against the Department of Corrections employees at SCI-Graterford, the state transferred him and he no longer remained in the Special Management Unit at SCI-Graterford.[104] Our Court of Appeals affirmed the inmate's "requests for injunctive and declaratory relief against the named [Department of Corrections] defendants were rendered moot by his transfer to SCI-Fayette, especially given the absence of any indication [] he will once again be confined at SCI-Graterford."[105]

Our Court of Appeals in *Banks v. Secretary of Pennsylvania Department of Corrections* also concluded an inmate-plaintiff's transfer from his prior prison facility moots his claims for injunctive and declaratory relief against Department of Corrections-defendants at the prior facility

who allegedly violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000, the First Amendment, and the Equal Protection Clause.[106] Our Court of Appeals noted "[a]lthough 'the mootness of a . . . claim for injunctive relief is not necessarily dispositive regarding the mootness of . . . [a] claim for a declaratory judgment,' [the inmate's] claim for declarations [against] the SCI-Retreat defendants are similarly moot" for being prison-specific.[107] The inmate's transfer from the complained-of prison mooted his declaratory and injunctive claims against previous prison officials at, and relating to, his prior prison facility.

As in *Colón-Montañez*, Mr. Fantauzzi's transfer from SCI-Graterford moots his injunctive relief claim seeking "to remove all '[d]eragatory [sic] gang and drug affiliation' memos, papers, etc. from [his] file."[108] Mr. Fantauzzi alleges no forward-looking purpose justifying this injunction, such as being applicable in his new facility; rather, his claims for injunctive relief and declaratory relief are moot—even if they were potentially valid while incarcerated at SCI-Graterford—as he is no longer enduring the alleged conditions at SCI-Graterford and has no contact with Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner.[109] Mr. Fantauzzi does not allege any "reasonable expectation" these state actors would subject him to the same violations, nor does he allege persisting conditions too short durationally to permit full litigation.[110] Because Mr. Fantauzzi is no longer incarcerated at SCI-Graterford and does not allege on-going relationships with Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner, his equitable and declaratory claims against them relating to his experiences at SCI-Graterford are moot. No exception to the mootness doctrine applies, so Mr. Fantauzzi's requests for declaratory and injunctive relief must be dismissed with prejudice.

**E.     We decline to exercise supplemental jurisdiction over Mr. Fantauzzi's state law claims.**

Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner argue we should decline to exercise supplemental jurisdiction over Mr. Fantauzzi's state law claims of negligence and intentional infliction of emotional distress if we dismiss the federal constitutional claims against them. We agree.

As we dismiss all federal claims against Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner, we must decide whether to exercise supplemental jurisdiction over Mr. Fantauzzi's state law claims. "A court 'may decline to exercise supplemental jurisdiction [over state law claims] if . . . the district court [dismisses] all claims over which it has original jurisdiction.'"[111]

We dismiss Mr. Fantauzzi's federal constitutional claims originally establishing federal jurisdiction and we decline to exercise supplemental jurisdiction over Mr. Fantauzzi's state law claims of negligence and intentional infliction of emotional distress. We dismiss Mr. Fantauzzi's state law claims against Secretary Wetzel, Superintendent Link, Correctional Officer Ferraci, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner for negligence and intentional infliction of emotional distress without prejudice, and he may refile these state law claims in the appropriate state court if he so desires.

**III.   Conclusion.**

As there is no federal subject matter jurisdiction over Mr. Fantauzzi's civil rights claims against the state actors in their official capacities, these claims are dismissed with prejudice. We also dismiss his injunctive and declaratory relief claims with prejudice as he cannot possibly plead

20

facts warranting this relief as he is no longer in custody at SCI-Graterford. We also dismiss procedural due process claims challenging the grievance process with prejudice.

Mr. Fantauzzi's claims against Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner solely concern his dissatisfaction with SCI-Graterford's grievance procedure and outcome. Mr. Fantauzzi's claims against the state actors in their individual capacities do not trigger Due Process Clause protections as inmates have no constitutionally protected right to specific prison grievance procedures. Mr. Fantauzzi's due process claims against Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner in their individual capacities are dismissed with prejudice. Mr. Fantauzzi's Eighth Amendment claims against Superintendent Link, Lieutenant Reber, Captain Terra, and Chief Grievance Officer Varner do not meet the "deliberate indifference" standard under the Eighth Amendment as Mr. Fantauzzi's only allegations against them involve their resolution of his grievances and grievance appeals. Mr. Fantauzzi's Eighth Amendment claims against Superintendent Link, Lieutenant Reber, Captain Terra, and Ms. Varner challenging the grievance procedures are dismissed with prejudice.

We dismiss his remaining civil rights claims relating to the assault without prejudice to Mr. Fantauzzi possibly pleading the state actors' potential liability for failing to protect him from another inmate's assault. We decline to exercise supplemental jurisdiction over Mr. Fantauzzi's state law claims of negligence and intentional infliction of emotional distress as we dismissed all federal constitutional claims within our original jurisdiction.

---

[1] ECF Doc. No. 23 at ¶ 11.

[2] *Id.* at ¶ 12(a).

[3] *Id.* at ¶ 12(b).

21

[4] *Id.*

[5] *Id.* at ¶¶ 14–15.

[6] *Id.* at ¶ 15.

[7] *Id.* at ¶¶ 17–18.

[8] *Id.*

[9] *Id.* at ¶ 19.

[10] *Id.* at ¶ 16.

[11] *Id.* at ¶ 20.

[12] *Id.* at ¶ 21.

[13] *Id.* at ¶ 33.

[14] *Id.* at ¶ 23.

[15] *Id.* at ¶ 22.

[16] *Id.* at ¶ 25.

[17] *Id.* at ¶ 24.

[18] *Id.* at ¶ 27.

[19] *Id.*

[20] *Id.* at ¶¶ 29, 31.

[21] *Id.* at ¶ 29.

[22] *Id.*

[23] "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Lundlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). "A motion to dismiss [relating] to the Eleventh Amendment is properly brought under Federal Rule of Civil Procedure 12(b)(1)." *Urella v. Pennsylvania State Troopers Association*, 628 F. Supp. 2d 600, 604 (E.D. Pa. 2008) (citing *Blanciak v. Allegheny Lundlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). "Rule 12(b)(1) provides [] a court may dismiss a complaint for 'lack of jurisdiction over the subject matter' of a case." *Id.* As "[f]ederal courts are courts of limited jurisdiction," they do not have the power to hear cases without first establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377

(1994); *see Tagayun v. Stolzenberg*, 239 Fed. App'x 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case.").

²⁴ *Kentucky v. Graham et al.*, 473 U.S. 159, 169 (1985).

²⁵ 42 Pa.C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia v. Pennsylvania Department of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000) ("The Pennsylvania legislature has, by statute, expressly declined to waive its Eleventh Amendment immunity."); *see Quern v. Jordan*, 440 U.S. 334, 342 (1979) (holding 42 U.S.C. § 1983 does not override Commonwealth's Eleventh Amendment immunity).

²⁶ *Kentucky*, 473 U.S. at 169; *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action against the state.") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101–02 (1984) ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.").

²⁷ *Fox v. Bayside State Prison*, 726 Fed. App'x 865, 867–68 (3d Cir. 2018).

²⁸ *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

²⁹ *Pennhurst State School & Hospital*, 465 U.S. at 121.

³⁰ ECF Doc. No. 23 at ¶¶ 3–9.

³¹ 71 Pa. Stat. § 61 (2011); *Lavia*, 224 F.3d at 195.

³² *Fox*, 726 Fed. App'x 867–68; *Lavia*, 224 F.3d at 195.

³³ *See Fox*, 726 Fed. App'x at 867–68 (affirming district court extending Eleventh Amendment immunity barring suits against Department of Corrections employees in their official capacities).

³⁴ *Ex parte Young*, 209 U.S. 123, 188–89 (1908); *see Pennhurst State School & Hospital*, 465 U.S. at 102–03 ("[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction [governing] the official's future conduct, but not one [awarding] retroactive monetary relief." Because punitive and compensatory damages are neither prospective nor injunctive, they are barred by the Eleventh Amendment. *See Larsen v. State Employees' Retirement System*, 553 F. Supp. 2d 403, 412–13 (M.D. Pa. 2008) (barring punitive damages against defendants in their official capacities as falling under the Eleventh Amendment's immunity); *see also Wright v. New Jersey/Department of Education*, 115 F. Supp. 3d 490, 499 (D.N.J. 2015) (identifying compensatory and punitive damages as "exactly the type of relief barred

23

by the Eleventh Amendment" because they "are designed to remedy a past wrong against the plaintiff").

[35] *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (emphasis added) (internal citation omitted) (citing *Cory v. White*, 457 U.S. 85, 90–91 (1982), noting the exception "has no application in suits against the States and their agencies," as they "are barred regardless of the relief sought.").

[36] *Quern*, 440 U.S. at 337 (explaining the distinction between permissible prospective relief and impermissible retrospective relief).

[37] *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) (O'Connor, J., concurring in part and concurring in judgment)).

[38] *McIlmail v. Pennsylvania*, No. 17-2991, 2018 WL 1071927, at *3 (E.D. Pa. Feb. 27, 2018).

[39] *Id.* at *2.

[40] *Id.* at *3.

[41] ECF Doc. No. 23 at ad damnum clause.

[42] *Id.* ¶¶ 35–40.

[43] *See Wright*, 115 F. Supp. 3d at 499 (identifying compensatory and punitive damages as "exactly the type of relief barred by the Eleventh Amendment" because they "are designed to remedy a past wrong against the plaintiff"); *Larsen*, 553 F. Supp. at 412–13 (barring punitive damages against defendants in their official capacities as falling under the Eleventh Amendment's immunity).

[44] *Wright*, 115 F. Supp. 3d at 498 ("Although claims seeking prospective injunctive relief are permitted, claims [acting] as a remedy for past violations are barred under the Eleventh Amendment."). Mr. Fantauzzi seeks a declaratory judgment for past acts including "failure to reasonably care for and protect," "deliberate indifference to [Mr. Fantauzzi's] safety," "failure to execute duties," and engaging "in a pattern of behavior deliberately indifferent and unreasonably harmful to [his] safety." ECF Doc. No. 23 at ad damnum clause.

[45] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

[46] *See Brown v. Hannah*, 850 F. Supp. 2d 471, 476 (M.D. Pa. 2012) ("If there is no protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.").

[47] *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

[48] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000); *cf. Eddowes v. Director, State Department of Corrections, et al.*, No. 18-125, 2018 WL 2248751, at *9 (M.D. Pa. Apr. 9, 2018) ("More fundamentally, [inmate's claim prison officials failed to respond to his grievances] fails as a matter of law 'because there is no apparent obligation for prison officials to investigate prison grievances.' Therefore, the alleged failure to adequately respond to these grievances does not support a free-standing constitutional tort claim, and this claim should be dismissed." (quoting *Paluch v. Secretary of Pennsylvania Department of Corrections*, 442 Fed. App'x 690, 695 (3d Cir. 2011)).

[49] *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004).

[50] *Glenn v. DelBalso*, 599 Fed. App'x 457, 459 (3d Cir. 2015); *Booth*, 346 F. Supp. 2d at 761 ("Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create a liberty interest requiring procedural protections under the Fourteenth Amendment.").

[51] *Burnside v. Moser*, 138 Fed. App'x 414, 416 (3d Cir. 2005).

[52] *Id.* at 416.

[53] *Gordon v. Vaughn*, No. 99-1511, 1999 WL 305240, at *2 (E.D. Pa. May 12, 1999); *see Wheeler v. Corrections Emergency Response Team*, No. 18-3813, 2019 WL 2715636, at *5 (E.D. Pa. June 27, 2019) (finding inmate plaintiff failed to state a claim of constitutional injury under section 1983 where plaintiff's allegations suggested a post-deprivation procedure existed, he engaged in the procedure, and received an unfavorable response); *see also Dickens v. Taylor*, 464 F. Supp. 2d 341, 353 (D. Del. 2006) ("Plaintiff cannot maintain constitutional claims based upon inadequate grievances system," grievance denial, or failure to address his grievances).

[54] *Id.* at ¶¶ 27–28.

[55] *Id.* at ¶ 39.

[56] *Id.* at ¶ 27.

[57] ECF Doc. No. 23 at ¶¶ 24, 26.

[58] *Id.* at ¶ 39.

[59] *Id.* at ¶ 24.

[60] *Id.* at ¶ 26.

[61] *Id.* at ¶ 39.

[62] *Id.* at ¶ 32.

[63] *Id.* at ¶ 29.

[64] *Id.* at ¶ 39.

[65] *Id.* at ¶ 31.

[66] *Betts*, 621 F.3d at 260 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

[67] *Betts*, 621 F.3d at 259–60; *see Beenick v. LeFebvre*, 684 Fed. App'x 200, 205 (3d Cir. 2017) (affirming district court's dismissal of plaintiff's Fourteenth Amendment substantive due process claim where a "'more specific' Eighth Amendment claim is available").

[68] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences [potentially] drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content [allowing] the court to draw the reasonable inference [] the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). "[A] Complaint, including a pro se Complaint, must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure," "requir[ing] [] the Complaint be simple, concise, direct and set forth 'a short and plain statement of the claim showing [] the pleader is entitled to relief.'" *Atun El v. United States*, No. 13-3970, 2014 WL 1281230, at *1 (E.D. Pa. Mar. 31, 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

[69] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[70] *Id.*

[71] *Id.*; *see, e.g., Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990) (affirming dismissal of prison superintendent for plaintiff's failure to state a claim because nothing in the record suggested the superintendent's involvement in the alleged acts or his knowledge and acquiescence of those acts).

[72] ECF Doc. No. 23 ¶ 4.

[73] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted).

[74] *Id.*

[75] *Id.* at 832–33 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

[76] *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (confirming even an unsentenced inmate "had a clearly established constitutional right to have prison officials protect him from inmate violence.").

[77] *See id.* (quoting *Farmer*, 511 U.S. at 834).

[78] *Wilson v. Ellett*, No. 15-0283, 2016 WL 613824, at *2 (M.D. Pa. Feb. 16, 2016) (quoting *Farmer*, 511 U.S. at 834).

[79] *Bistrian*, 696 F.3d at 367 (quoting *Farmer*, 511 U.S. at 834).

[80] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also Bistrian*, 696 F.3d at 367 ("It is not sufficient [] the official should have known of the risk. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety [through circumstantial evidence].") (internal citations omitted).

[81] *Burton v. Kindle*, 401 Fed. App'x 635, 637–38 (3d Cir. 2010) ("In assessing where on the state-of-mind continuum misconduct must fall to establish a [section] 1983 claim, we have settled on 'deliberate indifference' [] in cases involving prisoners . . . .").

[82] *E.D. v. Sharkey*, No. 16-2750, 2017 WL 2126322, at *6–7 (E.D. Pa. May 16, 2017).

[83] *Id.* at *7.

[84] *Bistrian*, 696 F.3d at 368–71.

[85] ECF Doc. No. 23 at ¶¶ 35–38.

[86] *Bistrian*, 696 F.3d at 368–71.

[87] ECF Doc. No. 23 at ¶¶ 11, 12(b).

[88] *See Hodges v. Wilson*, 341 Fed. App'x 846, 849 (3d Cir. 2009) ("The single, two year-old incident with his cell mate [plaintiff] asserts does not establish [] prison officials 'kn[e]w of and disregard[ed] an excessive risk to [his] health or safety.").

[89] ECF Doc. No. 23 at ¶¶ 11–16.

[90] *Burton*, 401 Fed. App'x at 637–38 (finding inmate plaintiff failed to allege the prison official behaved with deliberate indifference because his complaint did not set forth any facts suggesting the official personally knew another inmate would attack him) (noting mere negligent conduct is not actionable under section 1983); *see County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

[91] *Wilson v. Ellett*, No. 15-0283, 2016 WL 613824, at \*2 (M.D. Pa. Feb. 16, 2016) (quoting *Farmer*, 511 U.S. at 834).

[92] *Beers-Capitol*, 256 F.3d at 125; *see also Bistrian*, 696 F.3d at 367 ("It is not sufficient [] the official should have known of the risk. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety [through circumstantial evidence].") (internal citations omitted).

[93] ECF Doc. No. 23 at ¶ 40.

[94] *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Gayle v. Warden Monmouth County Correctional Institution*, 838 F.3d 297, 303 (3d Cir. 2016) ("The parties must have a personal stake in the litigation not only at its inception, but throughout its existence. Therefore, 'if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot.'") (quoting *Rosetti v. Shalala*, 12 F.3d 1216, 1224 (3d Cir. 1993)).

[95] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

[96] *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *see also Griffin v. Beard*, 401 Fed. App'x 715, 716–17 (3d Cir. 2010) (mooting plaintiff's claims for injunctive and declaratory relief where the inmate plaintiff transferred from the complained-of prison facility).

[97] *Sutton*, 323 F.3d at 248 (quoting *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993)).

[98] *Colón-Montañez v. Keller et al.*, 663 Fed. App'x 102, 103 (3d Cir. 2016).

[99] *Id.*

[100] *Id.* at 104.

[101] *Id.*

[102] *Johnson v. Wenerowicz*, 440 Fed. App'x 60, 61–62 (3d Cir. 2011).

[103] *Id.* at 62.

[104] *Id.*

[105] *Id.* (citing *Sutton*, 323 F.3d at 248).

[106] *Banks v. Secretary of Pennsylvania Department of Corrections*, 601 Fed. App'x 101, 102–03 (3d Cir. 2015).

[107] *Id.* at 103 (quoting *Jordan v. Sosa,* 654 F.3d 1012, 1025, 1027–28 (10th Cir. 2011) for the proposition "prison-specific claims are moot on transfer because a declaration [defendants wronged inmate-plaintiff] at [an] institution where he no longer resides has no effect on a defendant's behavior toward him").

[108] ECF Doc. No. 23 at ad damnum clause.

[109] *See, e.g.*, *Banks*, 601 Fed. App'x at 102–03; *Johnson*, 440 Fed. App'x at 61–62.

[110] *Cf. Griffin*, 401 Fed. App'x at 716–17 (denying plaintiff's argument his claims "are not moot because the conditions he complains of are capable of repetition but evade review" where plaintiff transferred facilities and no longer experienced the violations bringing rise to his claims originally).

[111] *Thomas v. Zinkel*, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001) (quoting 28 U.S.C. § 1367(c)(3)); *see, e.g.*, *Leisure v. Lancaster County Prison*, 750 Fed. App'x 89, 92 (3d Cir. 2018) (affirming District Court's decision to decline exercising supplemental jurisdiction on plaintiff's state law medical negligence claim where it properly dismissed plaintiff's federal "deliberate indifference" claim); *Montgomery v. Aparatis Distribution Company*, 607 Fed. App'x 184, 188 (3d Cir. 2015) (affirming District Court's ability to decline to exercise supplemental jurisdiction over negligence claims where it "properly dismissed all claims falling within its original jurisdiction").